Case number 251629 Latoya Aaron v. Darren King, et al. Oral argument not to exceed 15 minutes per side. Ms. Ronk, you may proceed for the appellant. Good morning, your honors. Cheryl Ronk on behalf of appellant officers. I had reserved 5 minutes for rebuttal. In this excessive force case, what we must look to for guidance is Barnes v. Felix, a 2025 U.S. Supreme Court case. Most notably, that case says, in making these determinations, you must look to the totality of the circumstances. And that there is no time limit on those circumstances. In other words, you don't look at just the vest cam. You look at what the officers know about the situation and how they're reacting to the situation based on... So you've got these two different perspectives in the video, and I guess I'm trying to understand what is it outside the video that would help you. I mean, these were serious crimes, so you wouldn't have said, oh gosh, you didn't have to bring several people because they were serious crimes. They're two. And then I guess the thing that I'm struggling with from your side of the case is what are they supposed to do? I mean, the whole point is to get handcuffs on, right? I mean, that's the exercise they're engaged in. And from the video, it seems pretty unmistakable to me that he's not willing to... they're trying to pull his arms back. He's resisting. Obviously, it doesn't help that he has autism. I mean, this must have been a horrible event for him. But of course, the officers didn't know that, so horrible for them. So both ships passing in the night. But I can understand, in retrospect, why he was freaked out by this. But the officers don't know that problem. And all they know is the crimes that were allegedly committed, and they can't get the handcuffs on. So I'm struggling with what are they supposed to do here? Exactly, Your Honor. I mean, especially since these officers know that this individual at this exact same location... That was a friendly question. I flipped the case. I didn't know who won below. You're free to agree with me. Yes, I agree with you totally, Your Honor. But I would like to even strengthen that. It's been a long morning. Keep going, keep going. Sure, because they knew that... Why did you start with the need to look outside the camera? I'm so puzzled by that start. The officers knew that just days earlier, this individual at this exact same location had assault without warning or provocation. So that's what the officers are going into this situation with. So they are trying to stop any damage to the public as quickly and as easily as they can. What happened to the charges against him? They were dropped, but that is more to do with his situation regarding his mental issues. So what actually happened? They were dismissed. Weren't there two charges? There's two events, right? Yep, all the charges were dismissed. And is there some record that explains what happened? Why? It's my understanding they were dismissed because it was brought out that he has cognitive or behavioral problems, and therefore they just dismissed the charges. Both of them for the same reason? Yes. I don't know if the plaintiff would disagree, but that's my understanding. So that's why I say you look to the totality, because these officers are going into the situation knowing that there was an attack without warning or provocation at the exact same location. They don't want that to happen again. So they try to get the handcuffs on him when they can. He's a six-foot, three-inch individual weighing 250 pounds. As you're answering that question, I would be interested in hearing your understanding of what occurred. Didn't he voluntarily follow the officers away from the other patrons? And didn't he stand facing a case with his hands visible? And he was not verbally aggressive either. Is that correct? In isolation, yes, Your Honor, that is correct. He did, however, fight the officers in putting his hands into handcuffs. Did you call that fighting or didn't voluntarily move his hands, hand his hands to them? Well, he put his hands in front of him. So not only did he not voluntarily put his hands behind him, he put his hands in front of him so they could not handcuff him. And again, that's where the totality of the circumstances, maybe normally without knowing what had happened to lead up to this, that might not have seemed like such a threat. But given that they knew that he attacked without warning or provocation just days earlier in this exact location, there was an urgency to getting the handcuffs on this individual. You know, you said he put his hands in front of him. That's only once he's on the ground. I mean, when he's standing, his hands are to the side. His arms are to the side, aren't they, when he's standing? Well, he's fighting them going back. Excuse me? He's fighting them going back into handcuffs. He will not let his hands be put in handcuffs. Resisting is a legal term, too, but he's tensing his muscles. Okay. I don't have a word other than resist. I mean, he's not letting them put his hands in handcuffs. Clearly, they're trying to put his hands behind him and put him in handcuffs. He understands what they're trying to do, and he is resisting. There's no doubt he's resisting. You know, when I listened to it, did they say the words handcuffs? I mean, obviously, they had them there. Did they say that? I do not recall if they said, I won't put your hands in the handcuffs, but they were certainly pulling his arms behind him, and they had the handcuffs out. So I think that he had to. Did they say you're under arrest? They did not say that. I don't think they told him that, did they? They did not tell him that. Why not? He keeps asking, like, what's going on? Tell me what's happening. In retrospect, they probably should have. But their thought was they wanted him to get him away from the patrons as quickly as possible and get him in the handcuffs, and telling him that he was being arrested for assault, they thought, would prompt a fight-or-flight reaction, which is what the officers testified to. Now, keep in mind, when you're looking at excessive force, it's not whether the officers did the best thing or the right thing. It's whether an objective officer or objective reasonableness, a reasonable officer on the scene could have done the same thing, or they did not believe it was illegal. So did these officers believe what they were doing was illegal? No, they thought they had a plan for subduing someone in a speedy fashion who has this history. What about the dispute over whether there were knee strikes? Didn't Officer Palowski say in his incident report that he used three knee strikes when Aaron was on the ground? Yes, and I believe he said in his deposition that was not the term he should have used. But for a motion for summary disposition, we have to accept the facts most favorable to the plaintiff. So again, given all of the circumstances, given what they know about the strength, the propensity for an attack without warning or a provocation, did they act in such a way that a reasonable officer would act? I mean, pursuant to the law, qualified immunity ensures liability reaches only the plainly incompetent or those who knowingly violated the law. Can you say, as we sit here today, given the totality of the circumstances, that these officers knowingly violated the law? All of the cases the plaintiff points to do not have a few days' previous events such as occurred in this case. There is, in fact, no case that the plaintiff has presented that is on point with this case. Absent a case that is on point with this case, an officer is entitled to governmental immunity. So given the totality of circumstances trying to protect the good of the public, given the prior attack by this individual at this property just days earlier, the officers reasonably believed that they were doing what needed to be done to get this person to hand it to us. Thank you. We'll hear from the other side. Good morning. Good morning, Your Honors. For the record, I'm Rob Kamenak. I represent the plaintiff aptly. So what's your reaction to my reaction to the videos? Well, interesting. That's where I was going to start. You asked what else could they have done, in essence. Well, the first thing they could have done is they could have told me he was under arrest. And they never did it. And bear with me, because the second point, and I'm going to the video transcripts. I mean, what's the case that says that establishes excessive force? Well, it doesn't say it establishes excessive force. This whole thing could have been avoided. Listen, I think this is a – I'm really – it seems like it was the right thing to do with the charges. I'm curious exactly what happened. You can tell us that. But obviously if the officers had known he had autism, I suspect they would have behaved differently. And I can understand how someone with autism would have reacted the way he did. But the officer's first instinct is when someone's resisting putting you in handcuffs is that they have to be careful. It's not that the person has autism. I understand, Your Honor. But quite frankly, if they had told him he was under arrest, number one, they wouldn't have had resistance. Number two, if they didn't lie to him. And here's where I'm going. If you look at one of the proceedings, one of the videos, the male speaker – this is when they're asking to put his hands behind his back. While he's standing or on the ground? He's standing still. And the male speaker says, let me talk to you first and then I'll tell you all right. So what they were telling him is if he would put his hands behind his back, then they would tell him he was under arrest. And they didn't do that. Wait, can I just tell you? Sure. That's just not obviously – they have someone that randomly assaulted somebody, right? If they think they have someone who randomly assaulted somebody, their first instinct is to put handcuffs on. I guess I – I mean, I'm just imagining them having a conversation before they encounter him. Is that really a crazy thing to do in this setting? It's not a crazy thing to do, but quite frankly, the reason why all of this – and perhaps we're going in circles, and I apologize. Okay, the entire reason – he was passive before all of this happened. As a matter of fact, he passively resisted all through this. He never actively resisted. That's important, but when he's standing, you're right, you can't tell from the video precisely why his arm stays there. But it does seem like the officers are trying to pull it behind his back, right? Or do you think that's an unfair view of it? I'm not sure if it's unfair, but if you look at Pawlowski, he's got his arm hooked around the plaintiff's right arm, or I don't even think he can make a move, candidly. I don't think he could put his hands behind him if he tried to. They had his arms locked. There's one arm that's to the side. There's clearly one arm to the side while he's standing. One arm is to the side. The left, if I may, Your Honor, the left arm. Okay, so why is he not putting – it looks like it's being pulled, and he's resisting the pull. That's what it looks like. It is being pulled. Is he resisting? I think he is resisting the fact that he doesn't want his arms to go behind him because he doesn't know what's going on. Well, that's the tragedy. I agree with you. Well, I mean, at what point in time – let's go to the grand factors. Maybe it will be a little easier, at least for me. And when you do the grand factors, could you address the concept – there are two kinds of resistance that the law addresses. Passive resistance, which has a different arena of law, and active resistance, which follows a different line of cases. So let us hear your thoughts on the grand factors in regards to that distinction. Well, let's go to active resistance, then, as you just brought up, Your Honor. Here's a situation where you've got four officers surrounding him. They're big people as well, too. It's not just the plaintiff. There's no weapons involved. His hands, I think, are either at his side or in front. It's unclear from the video, in my mind. He stands in place. He takes commands. He moves away from the customers. The customers are not involved at that point in time. And quite frankly, you've got one of the officers threatening to break his arm. That's on the ground, and that's, again, watching it as he's refusing to let them handcuff him. But the excessive force is primarily when he is on the ground. He's taken down, and then he's kneed three times by Pulaski. Why? He's already down on the ground, and he's got three officers there. Why did they have to go to that? Why isn't that force to use the case law gratuitous? And I didn't mean to ask questions, Your Honor. I apologize. No, no. I mean, you're allowed to make rhetorical points. But I still don't understand. The mission is to put him in handcuffs because they suspect that he's the one who committed these significant crimes, one of which involved an assault. It seems to me they're allowed to complete the mission of getting him in handcuffs. And they start by standing up. That doesn't seem to work. He resists that. And on the ground, he moves his arm. That's where he's really resisting. I mean, he's putting his arms in front of him. There's no other. It's quite obvious what's going on. Now, maybe this is where the autism comes in, and that's, again, tragedy of the case. But I just don't understand why they're not allowed to get him in handcuffs. How can one logically say that they are actively resisting arrest when they don't know and they're not told that they are under arrest? How does that work? Anything beyond that is – Tell me the case that makes that dispositive. It doesn't. It's logic. What's that? I'm just saying it's pure logic. And two, there are cases that – I'm sorry, Your Honor. So you're saying it's the obvious case? I mean, because if we don't have a case that draws a line that officers know about, then you have to be in a Hope v. Peltzer, the obvious case. Well, you have the briefing that we gave you on clearly established, and we talk about the Smith v. Troy case. We talk about the Crawley case – Crawley, excuse me. We talk about Adams v. Matiba. Those are all cases where the person involved, the plaintiff, if I can use that term, was never told they were being arrested. And then at that point in time, there was a use of what we would call intermediate force. In particular, Your Honor, you talked about tensing up, the tensing up notion. And that's actually the Smith v. Troy case. So those cases do come down and say that one of the factors you look at is whether or not the person has been told that they're being arrested, and it's one of the factors that ties into this entire equation. We've got this – One thing, I just want to make sure whether the two of you agree that – why were the charges dismissed? Because of his – I don't know, but I don't know. I talked to my – I'm a fellow counselor, Your Honor. I talked to my trial attorney. I had the same explanation as Ms. Ryan gave the court. So I can only convey to you secondhand knowledge. It's the same explanation. Makes sense. Yeah, and I don't think there's anything of record on that. It's perhaps the more important thing for an appeal. Of the cases that you're speaking to, counsel, which one do you think is your best case for showing that your client's actions were only passive resistance? Probably Smith v. Troy.  Smith, I quote, a reasonable juror could conclude that in pulling his arms away, dismiss the plaintiff in that case, resistance was minimal, and the officer's response in taking Smith to the ground, which happened here, was excessive. And I'm quoting Smith, 874 Fed 3rd at 945. Is it excessive force to say I'm going to have to break your arm if you don't move your arms behind you? Is it excessive force? I'm trying to figure that out. I get the point that this isn't something one does at a dinner conversation, but what do you do? It actually was very effective, right? Those are words. It actually worked. That was what got him to move his arms back around. I don't know. I'm trying to figure out how that weighs into things. I can't figure out if it's material or not, I guess is another way of putting it. Well, I would think that anybody in my client's position hearing that somebody might break his arm would tense up, and would naturally... Well, it seems to have the opposite effect in this. No? I thought it was the broken log jam. I'm sorry. I didn't mean to talk over you. No, I think if you look, the body cam is when they say, ready, go, and they go and get him. Three of them jump on him, in my term, not in the audio or the videos, and they take him down. They talk about, make sure you do the sweep with the right leg. Talking about wrong leg, wrong leg. Was that excessive? I don't know. I think it was. That's our position. When he's down on the ground and they've got him pinned and they knee him... Are we allowed to factor in that one of the two crimes he allegedly committed was an assault? Well, you can factor it in the first gram factor. Doesn't that distinguish it from Smith, which is your best case? No. There was no, he hadn't committed any crime at all. They didn't even suspect him of a crime. But the severity of the crime is only relevant if it affects, in my mind, the second factor, whether there's a threat to the officers or others. And there's no indication here during this event that there was. There was nothing. He was completely passive. He was completely passive. When you say a threat to the officers, if they come, if you have a big number of people, yes, that's the whole point, not to allow a threat to the officers. Right. That was good procedure. Good procedure. So you avoid a worse situation. Good procedure to have a lot of officers there. Bad procedure to sweep them down and then knee them. I mean, let's divide it out. So I'm not an expert on this, but I'm pretty confident at some point if you can't get handcuffs on standing up, the odds improve if the person's lying on the ground. That makes sense to me. No? That's not a reasonable inference? It's a reasonable inference that if you've got to get the handcuffs on him, that's the way to go. I understand that. But we're back to my predicate point, is that they never, and the cases I talked about, all three of the cases that I talked about, and if you read the, and I know the court has read these cases, I'm not trying to be insulting, but in each occasion, the plaintiff was not advised that he was under arrest. The officers then took steps to restrain him, and the court had found that there was excessive force by using intermediate force. Now, the force could be a takedown. One of the cases talks about a takedown. One of the cases talks about using a taser. So, you know, where do you break the circle, so to speak? And I'm getting from the court that that seems, that apparently seems to be irrelevant to the excessive force equation, and I disagree with that. What are you saying is irrelevant? That they didn't even tell him he was under arrest. What did they really expect? I can't figure that out. I mean, I'd love a case where someone talked through this, and you say it's too obvious to have to mention, and that's not that satisfying. So that's what you're hearing, that we don't know what to do with it. Fair enough. But at the end of the day, if you don't tell somebody they're under arrest, and from here we'll go to the facts of the case, they are passive. I mean, we're not talking about anybody verbally threatening anybody. We're not talking about flight. We're not talking about movement. We're not talking about anything. We're talking about the fact that he has his hands either at his side or in front of him. He says, tell me what's going on. He doesn't know what's going on. And suddenly they decide they lie to him, and I've said that. You know, this is something that I think is pretty important. You know, they didn't tell him the truth. The officer can come out and tell him anything he wants, and just to get him in a position. Let me talk to you first, and then I'll tell you all right. They didn't talk to him. If they had talked to him first, they would have said you're under arrest. They didn't do it. Say again what the officer said, because he did talk to him. But go ahead, what was problematic? Is that when you say he lied? Is that your point? Absolutely. Okay, go ahead. Here's the sequence. Put your hands behind your back. He says, what's going on? And hands behind the back, big man, you tell me first. Put your hands behind your back, all right. These are the officers. Officers, let me talk to you first, and then I'll tell you, all right. And he says, all right, what's going on? And they don't. They don't talk to him and tell him at that point. He's under arrest. They take him down. Just tell me if I have a misimpression. Yes, the officers got louder and more aggressive. I thought the first officer's tone was actually pretty respectful, and I thought he was trying to lower the temperature. Now, maybe I just misperceived it. That's why I'm asking you. His tone is fine. It's what he says. It's the content. He repeatedly asks a dozen times throughout this whole thing, what's going on? Three police officers walk in. They surround him, right? And he says, what's going on? What's going on? What's going on? Whether they know he's autistic or not, forget it. They don't know. And they never, ever tell him, you're under arrest. There's a prior event, whatever. Put your hands behind your back. What if they had told him, you're under arrest, put your hands behind your back? What would have happened? We don't know, but he probably would have put his hands behind his back. Out of curiosity, let's say they did say that and everything else was the same. Would that prove there was no excessive force? Everything else was the same. In other words, the whole incident unfolds exactly the same way with one exception. At the outset, he says, you're under arrest for these two crimes. Please put your hand behind your back. And then after the officer says that, everything unfolds precisely the same way. Would that establish that the officers win because they said you're under arrest? No, it would have established that there wouldn't have been a need to use force. The force would have been gratuitous. My hypothetical is that everything unfolds the same way that we watched on the video with one qualification. The officer does what you think they should have done. They start by saying, you're under arrest for these two incidents. Please put your hands behind your back so we can handcuff you. And then everything proceeds exactly the same way it did. Arms tensed, won't put his arms behind, they take him down. Everything else is exactly the same. Would the officers win because they made this initial statement? No. The resistance was passive in any event. Doesn't that suggest that it's not that material? The resistance was passive in all regards. Okay. It, because if you go, if you look at these cases, I know my time's run, I apologize. But all the other indicia of what happened here, it shows no active resistance whatsoever. And I, quite frankly, if there's no active resistance, you can't win on the totality of the circumstance. I think this court's done more of these cases than I have. And quite frankly, if you don't win on active resistance or flight, then quite, you can't win on these excessive force cases. That's simple. That's helpful. I'm going to leave everything else to the brief, including the forfeiture arguments. Thank you very much. Thank you. The question, again, isn't whether or not the officers could have done this better or done it differently. It's under the totality of the circumstances whether a reasonable officer on the scene would have thought he was acting illegally. Plaintiff has not presented any cases that mirror these facts where we have an assault beforehand and the officers act accordingly as they did in this case. They indicated they did not tell him he was under arrest because they did not want him to act as he did a couple days ago. Because the plaintiff cannot name a single case that is similar to this one, we are entitled to qualified immunity. Thank you, Your Honors. Thank you very much to both of you for your helpful briefs and, as always, for answering our questions, for which we're always grateful. The case will be submitted.